David H. Bernstein                                    ELECTRONICALLY FILED
(dhbernstein@debevoise.com)
S. Zev Parnass
(szparnass@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

*Attorneys for Plaintiff Energy Brands Inc. d/b/a Glacéau*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ENERGY BRANDS INC. d/b/a GLACÉAU,          :
                                            :
                        Plaintiff,          :
                                            :          08 Civ. 4909 (JSR)
            v.                              :
                                            :
NATIONAL BEVERAGE CORP.,                    :
                                            :
                        Defendant.          :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT AND DEMAND FOR JURY TRIAL

Energy Brands Inc. d/b/a Glacéau ("Glacéau"), by its attorneys, Debevoise &

Plimpton LLP, for its complaint, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for trade dress infringement, false designation of

origin, trade dress dilution, deceptive acts and practices, and unfair competition arising

out of the offering for sale of a nutrient-enhanced water product, ÀSANTÉ, by National

Beverage Corp. ("Defendant").

2.      Defendant has embarked on an unlawful campaign to lure

consumers into purchasing ÀSANTÉ waters in the mistaken belief that they come from,

are sponsored or licensed by, or are associated or affiliated with, the VITAMINWATER

brand, Glacéau's pioneering and market-leading nutrient-enhanced water product.  The

lynchpin of Defendant's campaign is the packaging of the ÀSANTÉ product, which

mimics several key elements of the well-known and distinctive VITAMINWATER trade

dress.

3.      As shown in the accompanying

pictures, the trade dress for ÀSANTÉ shares a

number of design elements in common with the

trade dress of VITAMINWATER.  Both products

(i) are packaged in nearly identical bell-shaped

plastic bottles, (ii) feature a similar vertical

presentation of words (here, VITAMINWATER

versus CLARITY), (iii) feature a two-toned look,

with one color in white and the other color



generally matching the color of the water and (iv) include a clear cap.  The products also

share an overall clinical, or health-conscious, look.  Defendant has even used similar sub-

brand names for its different flavors, such as Energy, Replenish, Stamina, Clarity and

Immune.

4.      Defendant's unlawful conduct is causing and will continue to cause irreparable harm to Glacéau.  In particular, Glacéau is concerned that consumers seeing Defendant's products will believe that ÀSANTÉ beverages are associated with Glacéau or its VITAMINWATER line of enhanced water beverages.  This conduct, if not enjoined, will undermine the goodwill Glacéau has spent the past nine years carefully cultivating for its VITAMINWATER brand.

## THE PARTIES

5.      Glacéau is a corporation organized and existing under the laws of the State of New York with its principal place of business at 17-20 Whitestone Expressway, Whitestone, New York 11357.

6.      Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One North University Drive, Fort Lauderdale, Florida 33324.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338 and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The amount in controversy is in excess of $75,000, exclusive of interest and costs.

8.      This Court has personal jurisdiction over Defendant pursuant to N.Y. Civ. Prac. L. & R. §§ 301 & 302(a).  Upon information and belief, Defendant regularly has solicited business in the State of New York and in this District, has transacted and done business in the State of New York and in this District, has

wrongfully caused injury to Glacéau in the State of New York and in this District, such injury being reasonably foreseeable, and derives substantial revenue from interstate commerce.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this District. Venue also is proper in this District pursuant to 28 U.S.C. § 1391(c) because Defendant is deemed to reside in this District.

## VITAMINWATER AND ITS TRADE DRESS

10.    Glacéau was founded with the idea of producing a nutrient-enhanced water with a unique and distinctive packaging that would make it distinguishable from the sea of typical bottled waters.  In 1999, Glacéau pioneered the enhanced water category when it launched the VITAMINWATER brand, a high quality, ultra pure bottled water enhanced with vitamins, minerals and other nutrients.  Since 1999, the brand has grown to include fifteen variations, each with its own flavor, color and vitamin blend.

11.    The VITAMINWATER brand is credited with creating the entire category of nutrient-enhanced waters and thus revolutionizing the staid water category. In just nine years, the brand has achieved critical renown, including in the industry, the press, and among consumers.  It also has enjoyed a remarkably high level of commercial success.  Notwithstanding the addition of numerous competitors in this category, the VITAMINWATER brand remains the recognized category leader.

12.    The phenomenal success of the VITAMINWATER brand has been based largely on its unique and distinctive package and label design, known as "trade dress," and the clean, bold, modern image that the trade dress conveys.  The trade dress of VITAMINWATER, which is registered with the United States Patent and Trademark Office (United States Trademark Registration No. 2,975,087; *see* Exhibit 1), is one of the most important ways in which consumers identify the brand on the shelf or in the hands of celebrities and other consumers, and it thus is among Glacéau's most valuable intellectual property rights.

13.    The key elements of this distinctive trade dress include:  (i) a bell-shaped plastic bottle, (ii) a vertical presentation of the VITAMINWATER name, (iii) a two-toned look, with one color in white and the other color generally matching the color of the water and (iv) a clear cap.  The result is an overall clinical, or health-conscious, look.  In addition, Glacéau uses health-related names for its various product flavors, such as Energy, Revive, Endurance, Focus and Defense.

14.    Unsolicited media attention and commentary from industry players and experts demonstrate that the distinctive VITAMINWATER trade dress has been a critical component of its success.  For example, in 2002, *Beverage World* named the VITAMINWATER brand as its "Silver Winner" in the bottled water category at the 8th annual Beverage Packaging Global Design Awards, an honor awarded to "the beverage industry professionals who rise to the challenge of creating striking packages that build the all-important product-consumer relationship."

15.     In order to protect its rights in its trade dress, Glacéau has, in some instances, been forced to take disputes to court.  One case, against Beverage Marketing USA, the makers of Arizona Iced Tea, is particularly instructive because, as shown in the pictures at right, the trade dress of Defendant's ÀSANTÉ product shares many of the trade dress elements of Arizona's WaterAID+ product, which was enjoined by this



Court on account of its infringement of the VITAMINWATER trade dress.  As seen above right, both products copy the bell-shaped bottle design of VITAMINWATER, feature a two-toned look with white and a second color that generally matches the color of the water, use a vertical color band with the name of the product or flavor, and have a clinical, health-oriented feel.  Significantly, the court in the Arizona case found that the trade dress was likely to cause confusion notwithstanding the prominent use of the Arizona trademark on the label, bottle and cap, and issued a TRO, followed by a preliminary injunction and then a permanent injunction, against the use of the confusing trade dress.  *See* Exhibit 2 (*Energy Brands Inc. v. Beverage Marketing USA, Inc.*, No. 02 Civ. 3227 (JSR), Permanent Injunction and Final Judgment (S.D.N.Y. July 17, 2002)). For all the same reasons, Glacéau is concerned that Defendant's ÀSANTÉ products also are likely to confuse consumers, notwithstanding the prominent use of the ÀSANTÉ name on the label.

## VITAMINWATER'S ADVERTISING, MARKETING AND SALES

16.     Glacéau has invested substantially in promoting and advertising its VITAMINWATER brand using a "grassroots" strategy that trades heavily off of the distinctive and recognizable VITAMINWATER trade dress.  This approach means that Glacéau makes VITAMINWATER visible in desirable venues and contexts so that potential consumers will see the product, recognize it from the bold, modern image conveyed by its trade dress, and want to try it themselves.  The strategy works, however, only if consumers later recognize VITAMINWATER products when they go to a store to purchase them or when they describe the products to others.  The nature of the trade dress – with its bold, two-toned label – supports this strategy because, even from far away, a VITAMINWATER bottle can be recognized by its distinctive trade dress, as shown in the photograph below.



17.     As part of this grassroots marketing approach, Glacéau has invested heavily in "events marketing," making the product available at high profile events such as the Super Bowl, World Series, New York City Marathon, Academy Awards, Grammy Awards, Tony Awards and Los Angeles Fashion Week; sampling events, making the product available to desirable consumers; public relations activities; trade shows; and product placement in films and television shows, including "Dodgeball," "Saturday Night Live," "Entourage," "Alias" and "Jimmy Kimmel Live." In fact, Glacéau recently launched an extensive promotional tie-in with the about-to-be-released "Sex and the City: The Movie," which includes not only placement of the product in the film, but also involves the production of two limited edition "Sex and the City" bottles of VITAMINWATER and full-color advertisements in magazines such as *Entertainment Weekly*.

18.     Glacéau also delivers cases of VITAMINWATER to celebrities, so that they can regularly be seen and photographed drinking VITAMINWATER, and has signed endorsement arrangements with prominent celebrities, including rap and movie star 50 Cent, *American Idol* stars Kelly Clarkson and Carrie Underwood, NBA stars Lebron James, Kobe Bryant, Dwight Howard and Shaquille O'Neal, Major League Baseball stars David Ortiz and David Wright, NFL stars Donovan McNabb, Brian Urlacher and Adrian Peterson, and NASCAR racing stars Kasey Kahne (see above) and Carl Edwards.

19.     VITAMINWATER products are often sold using point of sale devices, such as individualized display cases or coolers. All of the point of sale materials

include elements designed to be evocative of the VITAMINWATER trade dress.  In addition to point of sale materials, Glacéau has embarked on substantial advertising campaigns that prominently feature the VITAMINWATER trade dress.  The VITAMINWATER trade dress also appears on Glacéau's Fleet Graphics delivery trucks, hundreds of which are on the road each day.

20.    In 2007 alone, Glacéau spent over $100 million advertising and promoting the VITAMINWATER brand.  Glacéau has budgeted to spend well in excess of this amount promoting the product in 2008.

21.    VITAMINWATER beverages have enjoyed exponential sales growth since their introduction in 1999.  In 2007 alone, Glacéau's retail revenues from VITAMINWATER beverages exceeded $720 million, representing the sale of more than 50 million cases.  In 2008, Glacéau expects revenues of more than $1 billion.

## LIKELIHOOD OF CONFUSION

22.    Given the similarity between the products' respective trade dresses, there is a likelihood that consumers and retailers will buy the ÀSANTÉ product under the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of VITAMINWATER.

23.    The likelihood of confusion is exacerbated by the fact that Defendant has chosen a series of sub-brand names for its various flavors that are similar to the sub-brand names used by Glacéau for its VITAMINWATER products.  For example, Defendant's sub-brand names include Energy, Replenish, Stamina, Clarity and

Immune whereas Glacéau's sub-brand names include Energy, Revive, Endurance, Focus and Defense.

24.     The likelihood of confusion is further exacerbated by the fact that nutrient-enhanced water is a relatively low-cost item (less than $2/bottle), and consumers are unlikely to exercise a great deal of care before making a purchase.  In fact, it is often an impulse purchase and is placed in coolers near a store's checkout counter or at the end of aisles in grocery stores.

### IRREPARABLE HARM

25.     In developing and marketing its ÀSANTÉ product, Defendant has gone beyond fair competition and has adopted a trade dress that is likely to confuse consumers into thinking they are buying a product that comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of VITAMINWATER.

26.     As a result of Defendant's conduct, Glacéau will suffer irreparable harm.  Most obviously, it will lose sales and revenues, as customers are confused into buying ÀSANTÉ products under the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of VITAMINWATER.  In addition, Defendant's sale of ÀSANTÉ in its current packaging will undermine the goodwill that Glacéau has developed for its VITAMINWATER brand and trade dress.  And, if not enjoined, Defendant's use of this trade dress will encourage other beverage marketers to adopt similar designs for their products, which eventually will completely dilute the distinctiveness of the VITAMINWATER trade dress.

## COUNT I:  TRADE DRESS INFRINGEMENT UNDER
## SECTION 32 OF THE LANHAM ACT

27.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

28.     The trade dress of VITAMINWATER is registered with the United States Patent and Trademark Office under United States Trademark Registration No. 2,975,087.  *See* Exhibit 1.

29.     The trade dress of VITAMINWATER is used in commerce, is non-functional, is inherently distinctive, and also has acquired substantial secondary meaning in the marketplace.

30.     ÀSANTÉ beverages, which are now being sold in commerce, feature a trade dress that is confusingly similar to the trade dress of VITAMINWATER enhanced water beverages.  Defendant's manufacture, distribution, sale and promotion of ÀSANTÉ thus is likely to cause confusion and mistake and to deceive retailers and consumers as to the source, origin or sponsorship of its products.  Consumers seeing ÀSANTÉ in the marketplace likely will believe that it comes from, is sponsored or licensed by, or is associated or affiliated with, VITAMINWATER.

31.     Defendant's acts of trade dress infringement, unless restrained, will cause great and irreparable injury to Glacéau and to the business and goodwill represented by the VITAMINWATER trade dress, in an amount that cannot be ascertained at this time, leaving Glacéau with no adequate remedy at law.

32. Defendant's deceptive marketing and sales practices in connection with ÀSANTÉ in its present packaging constitute infringement of the registered VITAMINWATER trade dress in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

33. By reason of the foregoing, Glacéau is entitled to injunctive relief against Defendant, restraining it from any further acts of trade dress infringement and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendant's aforesaid acts.

### COUNT II:  TRADE DRESS INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN UNDER SECTION 43(a) OF THE LANHAM ACT

34. Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

35. Defendant's deceptive marketing and sales practices in connection with ÀSANTÉ in its present packaging constitute infringement of the VITAMINWATER trade dress and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

36. By reason of the foregoing, Glacéau is entitled to injunctive relief against Defendant, restraining it from any further acts of trade dress infringement and false designation of origin and, after trial, recovery of any damages (to the extent calculable) proven to have been caused by reason of Defendant's aforesaid acts.

## COUNT III: TRADE DRESS
## DILUTION UNDER NEW YORK STATUTORY LAW

37.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

38.     Defendant's manufacture, distribution, sale and promotion of ÀSANTÉ is likely to dilute and detract from the distinctiveness of the VITAMINWATER trade dress.

39.     Defendant's acts of trade dress dilution, unless restrained, will cause great and irreparable injury to Glacéau and to the business and goodwill represented by the VITAMINWATER trade dress, in an amount that cannot be ascertained at this time, leaving Glacéau with no adequate remedy at law.

40.     The acts of Defendant as described above constitute trade dress dilution in violation of N.Y. Gen. Bus. Law § 360-l.

## COUNT IV: DECEPTIVE ACTS AND
## PRACTICES UNDER NEW YORK STATUTORY LAW

41.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

42.     The acts of Defendant as described above constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law §§ 349-50.

## COUNT V: UNFAIR COMPETITION
## UNDER NEW YORK COMMON LAW

43.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

44.     The acts of Defendant as described above constitute unfair competition in violation of Glacéau's rights under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

## PRAYER FOR RELIEF

WHEREFORE, Glacéau respectfully prays:

A.     That Defendant and all those acting in concert or participation with it (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) be temporarily, preliminarily and then permanently enjoined and restrained from:

i.     manufacturing, distributing, shipping, advertising, marketing, promoting, selling or otherwise offering for sale ÀSANTÉ beverages in their present trade dress or any other trade dress that is confusingly similar to that of VITAMINWATER beverages; and

ii.     representing, by any means whatsoever, that any products manufactured, distributed, advertised, offered or sold by Defendant are Glacéau's products or vice versa, and from otherwise acting in a way likely to cause confusion, mistake or deception on the part of purchasers or consumers as to the origin or sponsorship of such products; and

iii.     doing any other acts or things calculated or likely to cause confusion or mistake in the minds of the public or to lead purchasers or

consumers into the belief that Defendant's products come from Glacéau or are somehow sponsored or licensed by, or associated or affiliated with, Glacéau or its products; and

      iv.    otherwise unfairly competing with Glacéau.

B.    That Defendant and those acting in concert or participation with it (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by their use of the ÀSANTÉ trade dress, including, but not limited to, recalling from any and all channels of distribution any and all infringing products and promotional materials.

C.    That Defendant account to Glacéau for its profits and any damages sustained by Glacéau, to the extent calculable, arising from the foregoing acts of trade dress infringement, false designation of origin, trade dress dilution, deceptive acts and practices and unfair competition.

D.    That, in accordance with such accounting, Glacéau be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

E.    That Glacéau be awarded its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

F.      That Glacéau be awarded punitive damages pursuant to the law of the State of New York in view of Defendant's intentional and willful trade dress infringement and other conduct.

G.      That Defendant deliver up for destruction all infringing products in its possession or control and all means of making the same in accordance with 15 U.S.C. § 1118.

H.      That Defendant file with the Court and serve on counsel for Glacéau within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendant has complied with any injunction which the Court may enter in this action.

I.      That Glacéau have such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMAND</u>

Glacéau demands a trial by jury on all claims as to which a jury trial may be had.

Dated: May 28, 2008
      New York, New York

                DEBEVOISE & PLIMPTON LLP

                By: <u>/s/ David H. Bernstein</u>
                   David H. Bernstein
                   (dhbernstein@debevoise.com)
                   S. Zev Parnass
                   (szparnass@debevoise.com)
                919 Third Avenue
                New York, New York 10022
                (212) 909-6696 (telephone)
                (212) 521-7696 (facsimile)

                *Attorneys for Plaintiff Energy Brands Inc.*
                *d/b/a Glacéau*

# EXHIBIT 1

Int. Cl.: 32

Prior U.S. Cls.: 45, 46 and 48

Reg. No. 2,975,087

## United States Patent and Trademark Office

Registered July 26, 2005

## TRADEMARK
### PRINCIPAL REGISTER



ENERGY BRANDS INC. (NEW YORK COR-
PORATION)
17-20 WHITESTONE EXPRESSWAY
WHITESTONE, NY 11357

FOR: NON-ALCOHOLIC, FLAVORED DRINK-
ING WATER, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-12-1999; IN COMMERCE 3-12-1999.

OWNER OF U.S. REG. NOS. 1,876,824, 2,658,236
AND OTHERS.

THE MARK CONSISTS OF A BOTTLE LABEL
WITH A BAND ACROSS THE TOP THIRD OF THE
LABEL, AND THE NAME GLACEAU VITAMIN-
WATER WRITTEN VERTICALLY THREE TIMES
ACROSS THE LABEL. THE WORD VITAMINWA-
TER IS WRITTEN IN LOWERCASE LETTERS AND
IN ALTERNATING EMPHASIZED AND REGULAR
FONT.

SEC. 2(F) IN PART, AS TO VITAMINWATER.

SER. NO. 76-445,170, FILED 8-29-2002.

CYNTHIA SLOAN, EXAMINING ATTORNEY

# **<u>EXHIBIT 2</u>**



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

ENERGYBRANDS, INC.,                                              :

                   Plaintiff,     : No. 02 Civ. 3227 (JSR)

                            :

         vs.                                      : **PERMANENT INJUNCTION**

                            : **AND FINAL JUDGMENT**

BEVERAGE MARKETING USA, INC., and          :
HORNELL BREWING COMPANY, INC. d/b/a        :
ARIZONA BEVERAGE COMPANY,                   :

           Defendants.         :

-------------------------------------------------------------x

    WHEREAS, plaintiff Energy Brands Inc. ("Energy Brands") commenced this

action against defendants Beverage Marketing USA, Inc. and Hornell Brewing Company,

Inc., d/b/a Arizona Beverage Company (collectively, the "Defendants") by filing a

Complaint on April 26, 2002 (the "Complaint"), alleging, inter alia, that the trade dress

for Defendants' product sold under the trade designation WATERAID (attached as

Exhibit A) infringes the distinctive trade dress for Energy Brands' VITAMINWATER

product (attached as Exhibit B) and has caused, and will likely continue to cause,

consumer confusion;

    WHEREAS, on April 29, 2002, Energy Brands applied for a temporary

restraining order and a preliminary injunction;

    WHEREAS, on May 1, 2002, the Court made preliminary factual findings and

conclusions in a Memorandum and Order (the "TRO") temporarily restraining the

Defendants from distributing, shipping, advertising, marketing, promoting, selling and/or

offering for sale WATERAID in its current trade dress or any substantially similar trade

M I C R O F I L M   -9:00 AM

JUL 2 3 2002

21340869v4

dress;

WHEREAS, Defendants have designed revised labels for the WATERAID product (attached as Exhibit C) and have provided these labels to Energy Brands;

WHEREAS, Energy Brands has indicated its belief that the revised labels do not infringe the trade dress of its VITAMINWATER product;

WHEREAS, on May 17, 2002, upon stipulation of the parties, the Court entered an order (the "PI") preliminarily enjoining Defendants from distributing, shipping, advertising, marketing, promoting, selling and/or offering for sale WATERAID in its current trade dress or substantially similar trade dress;

WHEREAS, Defendants filed an Answer and Counterclaims in this matter on May 31, 2002 (the "Counterclaims"), raising a series of defenses and asserting various counterclaims against Energy Brands, which counterclaims Defendants voluntarily dismissed on July 1, 2002;

WHEREAS, the parties now desire to conclude this litigation regarding the VITAMINWATER and WATERAID products;

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants and all those acting in concert or participation with them (including, but not limited to, their officers, directors, agents, servants, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns, distributors and retailers), are PERMANENTLY ENJOINED AND RESTRAINED from:

        a.     manufacturing, distributing, shipping, advertising, marketing, promoting, selling or otherwise offering for sale WATERAID in the

2

trade dress depicted in Exhibit A attached hereto (including but not limited to

both its 20 ounce and 42 ounce sizes) or in any other trade dress that infringes the

VITAMINWATER trade dress as depicted in Exhibit B attached hereto (except

that this Order does not restrict, limit, or preclude the manufacture, distribution,

shipping, advertising, promotion, selling, or otherwise offering for sale of

WATERAID in the revised trade dress depicted in Exhibit C);

        b.     representing, by any means whatsoever, that any products

manufactured, distributed, advertised, offered or sold by the Defendants are

Energy Brands' products or vice versa, and from otherwise acting in a way likely

to cause confusion, mistake or deception on the part of purchasers or consumers

as to the origin or sponsorship of such products;

        c.     doing any other acts or things calculated or likely to cause

confusion or mistake in the mind of the public or to lead purchasers or consumers

into the belief that (i) the Defendants' products come from Energy Brands or are

somehow sponsored by, associated with, or otherwise affiliated with Energy

Brands or its products; or (ii) Energy Brands' products come from the Defendants

or are somehow sponsored by, associated with, or otherwise affiliated with the

Defendants or their products; and

        d.     from otherwise unfairly competing with Energy Brands in

connection with Energy Brands' distribution, advertising, promotion or sale of its

VITAMINWATER product.

IT IS FURTHER ORDERED that Defendants are required to file with the Court

3

and serve upon Energy Brands' counsel, on or before July 31, 2002, a report, in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the requirements of the TRO, the PI, and this Permanent Injunction and Final Judgment. Such report shall (i) specify all steps taken by Defendants to ensure compliance with the TRO, the PI and this Permanent Injunction and Final Judgment (including by affidavit of individuals with personal knowledge of those steps), (ii) set forth a list of all distributors, retailers and other persons or entities to whom Defendants gave notice of the TRO, the PI or this Permanent Injunction and Final Judgment, including the date of notice and the manner in which it was communicated, and (iii) attach copies of all reports, memoranda, correspondence, notes, e-mails, and other documents relating to Defendants' compliance with the TRO, the PI and this Permanent Injunction and Final Judgment. To the extent that Defendants reasonably and in good faith believe that any document to be attached to the compliance report contains Defendants' trade secret information, Defendants may redact such trade secret information from the copies of the compliance report to be filed with the Court and served on Energy Brands' counsel for distribution to Energy Brands; provided, however, that Defendants shall in such case provide an unredacted copy of each such document to Energy Brands' counsel, which unredacted copy Energy Brands' counsel shall keep strictly confidential. If Energy Brands' counsel determines in good faith that disclosure of any such unredacted copy to representatives of Energy Brands is reasonably necessary in order for counsel to assess Defendants' compliance, Energy Brands may apply to this Court for a modification of this Order permitting such disclosure, it being understood

4

that, in any such proceeding, the burden of proving that the redacted material contains trade secrets shall rest on Defendants.

IT IS FURTHER ORDERED that Energy Brands may take discovery on the issue of Defendants' compliance with the TRO, the PI and this Permanent Injunction and Final Judgment, provided that Energy Brands must, if it so desires, indicate its intention to take such discovery on or before August 31, 2002. If Energy Brands timely indicates its intention to take such discovery, Defendants shall be required, upon 30 days' notice, to produce all documents that Energy Brands may request relating to the manner and form in which Defendants have complied with the TRO, the PI and this Permanent Injunction and Final Judgment, and thereafter to produce for deposition at the offices of Energy Brands' counsel the representative or representatives for Defendants most knowledgeable about the manner and form in which Defendants have complied with the TRO, the PI and this Permanent Injunction and Final Judgment.

IT IS FURTHER ORDERED that the bond filed by Energy Brands in this case is dissolved, and that Defendants shall make no claim against the bond or against Energy Brands or its attorneys or agents arising out of or related in any way to the TRO or the PI.

IT IS FURTHER ORDERED that this action is dismissed with prejudice, except that this Court shall retain jurisdiction to enforce any violation of the TRO, the PI, this Permanent Injunction and Final Judgment, and the Parties' settlement agreements dated as of July 11, 2002.

Dated: New York, New York
_____ 7 /19/ , 2002

_____
Jed S. Rakoff
United States District Judge

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 7/23/2

6

21340869v4

# **EXHIBIT A**









# EXHIBIT B





# **EXHIBIT C**





















