David H. Bernstein                                    ELECTRONICALLY FILED
(dhbernstein@debevoise.com)
S. Zev Parnass
(szparnass@debevoise.com)
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

*Attorneys for Plaintiff Energy Brands Inc. d/b/a Glacéau*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ENERGY BRANDS INC. d/b/a GLACÉAU,          :
                                           :
                    Plaintiff,             :
                                           :          08 Civ. 4909 (JSR)
          v.                               :
                                           :
NATIONAL BEVERAGE CORP.,                   :
                                           :
                    Defendant.             :
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Energy Brands Inc. d/b/a Glacéau ("Glacéau"), by its attorneys, Debevoise &

Plimpton LLP, for its amended complaint, alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for trademark and trade dress infringement,

trademark and trade dress dilution, false designation of origin, deceptive acts and

practices, and unfair competition, under both federal and state law, arising out of the

offering for sale of a new nutrient-enhanced water product, ÀSANTÉ, by National

Beverage Corp. ("Defendant").

2.    Defendant has embarked on an unlawful

campaign to lure consumers into purchasing ÀSANTÉ waters in

the mistaken belief that they come from, are sponsored or licensed

by, or are associated or affiliated with, the VITAMINWATER®

brand, Glacéau's pioneering and market-leading line of nutrient-

enhanced water beverages.  Defendant's coordinated campaign of

deception includes the wholesale copying of Glacéau's famous

and distinctive VITAMINWATER® trademark, Defendant's

dilution of the VITAMINWATER® trademark through its treating

that federally-registered trademark as a generic term, and its

improper design of the packaging for ÀSANTÉ water, which

appears intentionally to mimic several key elements of the well-

known and distinctive VITAMINWATER® trade dress.



3.    In particular, and as shown in the images at right,

Defendant has infringed and diluted Glacéau's trademark and trade

dress because its newly-designed ÀSANTÉ packaging shares the

following elements with the VITAMINWATER® trade dress:  (i)

the mark "VITAMIN WATER"; (ii) nearly identical bell-shaped

plastic bottles, (iii) a similar vertical presentation of words (*e.g.*,



VITAMINWATER® versus CLARITY), (iv) a two-toned look, with one color in white and the other color generally matching the color of the water; (v) a clear cap; and (vi) an overall clinical, or health-conscious, look.  Defendant has even used similar sub-brand names for its different flavors, such as Energy (compare to Glacéau's ENERGY), Replenish (compare to REVIVE), Stamina (compare to ENDURANCE), Clarity (compare to FOCUS) and Immune (compare to DEFENSE).  These similarities are simply too many to have occurred by chance; rather, they reflect a deliberate attempt to make ÀSANTÉ enhanced water beverages look as much like VITAMINWATER® enhanced water beverages as possible.

4.      Defendant's unlawful conduct is causing and will continue to cause irreparable harm to Glacéau.  In particular, Glacéau is concerned that consumers seeing Defendant's products will believe that ÀSANTÉ beverages are associated with Glacéau or its VITAMINWATER® line of enhanced water beverages.  This conduct, if not enjoined, will undermine the goodwill Glacéau has spent the past nine years carefully cultivating for its VITAMINWATER® brand.

## THE PARTIES

5.      Glacéau is a corporation organized and existing under the laws of the State of New York with its principal place of business at 17-20 Whitestone Expressway, Whitestone, New York 11357.  Its principal brand, VITAMINWATER®, is distributed throughout the United States and in select international markets.

6.      Upon information and belief, Defendant is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at

One North University Drive, Fort Lauderdale, Florida 33324.  Its brands include Shasta,

Faygo, Everfresh, LaCROIX, Rip It, Mt. Shasta, ClearFruit, Mr. Pure, Ritz, Crystal Bay,

Cascadia, Ohana, Big Shot and St. Nick's.  Defendant's brands are distributed throughout

the United States, including through national and regional grocery stores, warehouse

clubs, mass-merchandisers, wholesalers, discount stores, convenience and gas stations,

hospitals, schools, military bases, airlines, hotels, food-service wholesalers, and vending

machines and coolers.  *See* http://www.nationalbeverage.com/50Products.htm and

http://www.nationalbeverage.com/20TodaysBusiness.htm.

<u>**JURISDICTION AND VENUE**</u>

7.     This Court has original jurisdiction over the subject matter of this

action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338 and has

supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  The amount in controversy is in

excess of $75,000, exclusive of interest and costs.

8.     This Court has personal jurisdiction over Defendant pursuant to

N.Y. Civ. Prac. L. & R. §§ 301 & 302(a).  Upon information and belief, Defendant

regularly has solicited business in the State of New York and in this District, has

transacted and done business in the State of New York and in this District, has

wrongfully caused injury to Glacéau in the State of New York and in this District, such

injury being reasonably foreseeable, and derives substantial revenue from interstate

commerce.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)

because a substantial part of the events giving rise to this action occurred in this District.

Venue also is proper in this District pursuant to 28 U.S.C. § 1391(c) because Defendant is deemed to reside in this District.

**THE VITAMINWATER® PRODUCT LINE,
TRADEMARK AND TRADE DRESS**

10.     Glacéau was founded with the idea of producing a nutrient-enhanced water with a unique and distinctive packaging that would make it distinguishable from the sea of typical bottled waters.  In 1999, Glacéau pioneered the enhanced water category when it launched the VITAMINWATER® brand, a line of natural, high quality, ultra-pure bottled waters enhanced with vitamins, minerals and other nutrients.  Since then, the brand has grown to include fifteen variations, each with its own flavor, color, sub-brand name, and vitamin blend.

11.     The VITAMINWATER® brand is credited with creating the entire category of nutrient-enhanced waters and thus revolutionizing the then-staid water category.  In the nine years since, the brand has achieved critical renown, including in the industry, the press, and among consumers.  It also has enjoyed a remarkably high level of commercial success.  Notwithstanding the addition of numerous competitors in this category, the VITAMINWATER® brand remains the recognized category leader.

12.     The VITAMINWATER® trademark is registered with the United States Patent and Trademark Office ("USPTO").  *See, e.g.,* United States Trademark Registration No. 2,974,987 (a copy of which is attached hereto as Exhibit 1).  Glacéau has successfully challenged a number of third parties who have attempted to appropriate or otherwise misuse its famous VITAMINWATER® trademark.

13.    The VITAMINWATER® label trade dress also is registered with the USPTO under United States Trademark Registration No. 2,975,087.  *See* Exhibit 2.

14.    The phenomenal success of the VITAMINWATER® brand has been based largely on its distinctive trademarked-name and its unique package and label design, known as "trade dress."  The trade dress of VITAMINWATER®, which conveys a clean, bold, health-conscious image, is one of the most important ways in which consumers identify the brand on the shelf or in the hands of celebrities and other consumers, and it thus is among Glacéau's most valuable intellectual property rights.

15.    The key elements of this distinctive trade dress include:  (i) use of the VITAMINWATER® trademark; (ii) a bell-shaped plastic bottle; (iii) a vertical presentation of the VITAMINWATER® name; (iv) a two-toned look, with one color in white and the other color generally matching the color of the water; (v) a clear cap; and (vi) an overall clinical, or health-conscious, look.  This Court has already found that the VITAMINWATER® trade dress is "unique," "distinctive," and has acquired "secondary meaning."  *Energy Brands Inc. v. Beverage Marketing USA, Inc.*, No. 02 Civ. 3227 (JSR), 2002 WL 826814 (S.D.N.Y. May 1, 2002).

16.    In addition, Glacéau uses health-related names for its various product flavors, such as Energy, Revive, Endurance, Focus and Defense.

17.    Unsolicited media attention and commentary from industry players and experts demonstrate that the distinctive VITAMINWATER® trade dress has been a critical component of its success.  Early in the history of the brand, *Beverage World* named the VITAMINWATER® brand as its "Silver Winner" in the bottled water

category at its annual Beverage Packaging Global Design Awards, an honor awarded to "the beverage industry professionals who rise to the challenge of creating striking packages that build the all-important product-consumer relationship."

<u>**ADVERTISING, MARKETING AND SALES OF
VITAMINWATER® ENHANCED WATER BEVERAGES**</u>

18.     Glacéau has invested substantially in promoting and advertising its VITAMINWATER® brand using a "grassroots" strategy that trades heavily off of the distinctive and recognizable VITAMINWATER® trademark and VITAMINWATER® trade dress.  This approach means that Glacéau makes VITAMINWATER® beverages visible in desirable venues and contexts so that potential consumers will see the product, recognize it from the bold, modern image conveyed by its trade dress, and want to try it themselves.  The strategy works, however, only if consumers later recognize VITAMINWATER® products when they go to a store to purchase them or when they describe the products to others.  The nature of the trade dress – with its bold, two-toned label – supports this strategy because, even from far away, a VITAMINWATER® bottle can be recognized by its distinctive trade dress, as shown in the accompanying photograph.



19.     As part of this grassroots marketing approach, Glacéau has invested heavily in "events marketing," making the product available at high profile events such as the Super Bowl, World Series, New York City Marathon, Academy Awards, Grammy Awards, Tony Awards and Los Angeles Fashion Week; sampling events, making the product available to desirable consumers; public relations activities; trade shows; and product placement in films and television shows, including "Dodgeball," "Saturday Night Live," "Entourage," "Alias" and "Jimmy Kimmel Live." Glacéau recently launched an extensive promotional tie-in with the just-released "Sex and the City:  The Movie," which includes not only placement of the product in the film, but also involves the production of two limited edition "Sex and the City" bottles of VITAMINWATER® and full-color advertisements in magazines such as *Entertainment Weekly*.

20.     Glacéau also delivers cases of VITAMINWATER® to celebrities, so that they can regularly be seen and photographed drinking VITAMINWATER®, and has signed endorsement arrangements with prominent celebrities, including rap and movie star 50 Cent, *American Idol* stars Kelly Clarkson and Carrie Underwood, NBA stars Kobe Bryant, Dwight Howard, Lebron James, and Shaquille O'Neal, Major League Baseball stars David Ortiz and David Wright, NFL stars Donovan McNabb, Adrian Peterson, and Brian Urlacher, and NASCAR racing stars Kasey Kahne (shown in the photograph at paragraph 18, above) and Carl Edwards.

21.     VITAMINWATER® products are often sold using point-of-sale devices, such as individualized display cases or coolers.  All of the point-of-sale materials

prominently display the VITAMINWATER® trademark and include elements designed to be evocative of the VITAMINWATER® trade dress. In addition to point-of-sale materials, Glacéau has embarked on substantial advertising campaigns that prominently feature the VITAMINWATER® trademark and VITAMINWATER® trade dress. The VITAMINWATER® trademark and VITAMINWATER® trade dress also appear on Glacéau's Fleet Graphics delivery trucks, hundreds of which are on the road each day.

22.    In 2007 alone, Glacéau spent over $100 million advertising and promoting the VITAMINWATER® brand. Glacéau has budgeted to spend well in excess of this amount for promoting the VITAMINWATER® brand in 2008.

23.    VITAMINWATER® beverages have enjoyed exponential sales growth since their introduction in 1999. In 2007 alone, Glacéau's retail revenues from VITAMINWATER® beverages exceeded $700 million, representing the sale of more than 50 million cases. In 2008, Glacéau expects revenues of more than $1 billion based on the sale of VITAMINWATER® products.

**PRIOR ACTIONS TO PROTECT THE
VITAMINWATER® TRADEMARK AND TRADE DRESS**

24.    Because of the distinctiveness of the VITAMINWATER® brand, its renown in the marketplace, and its commercial success, a number of competitors have tried to mimic aspects of the VITAMINWATER® trademark and trade dress. In every case, Glacéau has contacted the competitor and tried to work out an amicable resolution.

25.    In order to protect its rights, in some instances, Glacéau has been forced to take disputes to court. *See, e.g., Energy Brands Inc. v. Beverage Marketing*

9

*USA, Inc.*, No. 02 Civ. 3227 (JSR), 2002 WL 826814 (S.D.N.Y. May 1, 2002)

(temporary restraining order granted against infringing trade dress of Arizona

WaterAID+); *Energy Brands Inc. v. Consac Indus., Inc.*, No. 02 Civ. 3594 (DAB)

(S.D.N.Y. May 15, 2002) (temporary restraining order granted against infringing trade

dress of Enhance); *Energy Brands Inc. v. Pepsico, Inc.*, No. 06 Civ. 2662 (SAS)

(S.D.N.Y. filed Apr. 5, 2006) (settlement, immediately following TRO hearing, pursuant

to which Pepsico agreed to change trade dress of Life Water).

   26. The case against

Beverage Marketing USA, the makers of

Arizona Iced Tea, is particularly instructive

because, as shown in the pictures at right, the

trade dress of Defendant's ÀSANTÉ product

shares many of the trade dress elements of

Arizona's WaterAID+ product, which was

enjoined by this Court on account of its

infringement of the VITAMINWATER® trade



dress.  Both products copy the bell-shaped bottle design of VITAMINWATER®, feature

a two-toned look with white and a second color that generally matches the color of the

water, use a vertical color band with the name of the product or flavor, and have a

clinical, health-oriented feel.  Significantly, the court in the Arizona case found that the

trade dress was likely to cause confusion notwithstanding the prominent use of the

Arizona trademark on the label, bottle and cap, and issued a TRO, followed by a

preliminary injunction and then a permanent injunction, against the use of the confusing trade dress. *See Energy Brands Inc. v. Beverage Marketing USA, Inc.*, No. 02 Civ. 3227 (JSR), Permanent Injunction and Final Judgment (S.D.N.Y. July 17, 2002) (a copy of which is attached hereto as Exhibit 3). Glacéau is concerned that Defendant's ÀSANTÉ products also are likely to confuse consumers, notwithstanding the prominent use of the ÀSANTÉ name on the label. Indeed, in at least one way, Defendant's product is far worse: not only has Defendant mimicked the VITAMINWATER® trade dress, it also has deliberately copied the VITAMINWATER® trademark.

### LIKELIHOOD OF CONFUSION AND DEFENDANT'S BAD FAITH

27.     Given Defendant's use of the phrase "VITAMIN WATER" on its label and the similarity between the products' respective trade dresses, there is a likelihood that consumers and retailers will buy the ÀSANTÉ product under the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of VITAMINWATER®.

28.     The likelihood of confusion is exacerbated by the fact that Defendant has chosen a series of sub-brand names for its various flavors that are similar to the sub-brand names used by Glacéau for its VITAMINWATER® products. For example, Defendant's sub-brand names include Energy, Replenish, Stamina, Clarity and Immune whereas Glacéau's sub-brand names include Energy, Revive, Endurance, Focus and Defense.

29.     The likelihood of confusion is further exacerbated by the fact that nutrient-enhanced water is a relatively low-cost item (less than $2 per bottle), and

consumers are unlikely to exercise a great deal of care before making a purchase.  In fact, it is often an impulse purchase and, for that reason, is placed in coolers near a store's checkout counter or at the end of aisles in grocery stores.

30.    Defendant's willful trademark and trade dress infringement is all the more apparent when viewed in light of Defendant's other beverage products, including water products, none of which make use of the phrase "VITAMIN WATER" or resemble the VITAMINWATER® trade dress.  As shown in the examples below, Defendant clearly knows how to design a product and trade dress in the beverage category (including the water category) that can create a unique impression.  The fact that Defendant elected to launch its latest beverage product using both the phrase "VITAMIN WATER" and a trade dress that is confusingly similar to the VITAMINWATER® trade dress reinforces the conclusion that the introduction of  ÀSANTÉ is part of an intentional scheme to confuse consumers and misappropriate the goodwill Glacéau has developed in its VITAMINWATER® brand.



**IRREPARABLE HARM**

31.    In developing and marketing its ÀSANTÉ product, Defendant has gone beyond fair competition through its use of the phrase "VITAMIN WATER" on its label and its adoption of a trade dress that is likely to confuse consumers into thinking they are buying a product that comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of the famous VITAMINWATER® line of enhanced water beverages.

32.    As a result of Defendant's conduct, Glacéau will suffer irreparable harm.  Most obviously, it will lose sales and revenues, as customers are confused into buying ÀSANTÉ products under the mistaken belief that it comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau, the makers of VITAMINWATER®.  In addition, Defendant's sale of ÀSANTÉ using the phrase "VITAMIN WATER" and in its current packaging will undermine the goodwill that Glacéau has developed for its VITAMINWATER® brand, trademark and trade dress.  And, if not enjoined, Defendant's use of the phrase "VITAMIN WATER" and this trade dress will encourage other beverage marketers to adopt similar marks and designs for their products, which eventually will completely dilute the distinctiveness of the VITAMINWATER® trademark and VITAMINWATER® trade dress.

**COUNT I:  REGISTERED TRADEMARK AND TRADE DRESS INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT**

33.    Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

34.    The VITAMINWATER® trademark is federally registered with the USPTO.  *See* Exhibit 1 (United States Trademark Registration No. 2,974,987).

35.    The VITAMINWATER® trademark is used in commerce and has acquired substantial secondary meaning in the marketplace.

36.    The trade dress of VITAMINWATER® is federally registered with the USPTO.  *See* Exhibit 2 (United States Trademark Registration No. 2,975,087).

37.    The trade dress of VITAMINWATER® is used in commerce, is non-functional, is inherently distinctive, and also has acquired substantial secondary meaning in the marketplace.

38.    ÀSANTÉ beverages, which are now being sold in commerce, make use of the phrase "VITAMIN WATER," which is nearly identical to Glacéau's VITAMINWATER® trademark (except for the addition of a space) and feature a trade dress that is confusingly similar to the trade dress of VITAMINWATER® enhanced water beverages.  Defendant's manufacture, distribution, sale and promotion of ÀSANTÉ is likely to cause confusion and mistake and to deceive retailers and consumers as to the source, origin or sponsorship of its products.  Consumers seeing ÀSANTÉ in the marketplace likely will believe that it comes from, is sponsored or licensed by, or is associated or affiliated with, Glacéau's VITAMINWATER® line of beverages.

39.    Defendant's acts of trademark and trade dress infringement, unless restrained, will cause great and irreparable injury to Glacéau and to the business and goodwill represented by the VITAMINWATER® trademark and VITAMINWATER®

trade dress, in an amount that cannot be ascertained at this time, leaving Glacéau with no

adequate remedy at law.

40.    Defendant's deceptive marketing and sales practices in connection

with its ÀSANTÉ enhanced water beverages constitute infringement of the registered

VITAMINWATER® trademark and VITAMINWATER® trade dress in violation of

Section 32 of the Lanham Act, 15 U.S.C. § 1114.

41.    By reason of the foregoing, Glacéau is entitled to injunctive relief

against Defendant, restraining it from any further acts of trademark and trade dress

infringement and, after trial, recovery of any damages (to the extent calculable) proven to

have been caused by reason of Defendant's aforesaid acts.

### COUNT II:  TRADEMARK AND TRADE DRESS INFRINGEMENT, AND FALSE DESIGNATION OF ORIGIN, UNDER SECTION 43(a) OF THE LANHAM ACT

42.    Glacéau repeats and realleges each and every allegation in the

foregoing paragraphs as if fully set forth herein.

43.    Defendant's deceptive marketing and sales practices in connection

with its ÀSANTÉ enhanced water beverages constitute infringement of the

VITAMINWATER® trademark and VITAMINWATER® trade dress and false

designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C.

§ 1125(a).

44.    By reason of the foregoing, Glacéau is entitled to injunctive relief

against Defendant, restraining it from any further acts of trademark and trade dress

infringement and false designation of origin and, after trial, recovery of any damages (to

the extent calculable) proven to have been caused by reason of Defendant's aforesaid

acts.

## COUNT III:  TRADEMARK AND TRADE DRESS INFRINGEMENT UNDER NEW YORK LAW

45.    Glacéau repeats and realleges each and every allegation in the

foregoing paragraphs as if fully set forth herein.

46.    Defendant's acts, as described above, constitute trademark and

trade dress infringement under N.Y. Gen. Bus. Law § 360-k.

## COUNT IV:  TRADEMARK AND TRADE DRESS DILUTION UNDER SECTION 43(c) OF THE LANHAM ACT

47.    Glacéau repeats and realleges each and every allegation in the

foregoing paragraphs as if fully set forth herein.

48.    The VITAMINWATER® trademark and VITAMINWATER®

trade dress are famous and distinctive trademarks that are widely recognized by the

general consuming public of the United States as a designation of source for Glacéau's

goods.  Among other things:  (a) the VITAMINWATER® trade dress is inherently

distinctive and both the VITAMINWATER® trademark and VITAMINWATER® trade

dress have acquired a high degree of distinctiveness; (b) the VITAMINWATER®

trademark and VITAMINWATER® trade dress have been used for over nine years

throughout the United States; (c) Glacéau has spent hundreds of millions of dollars

advertising and publicizing the VITAMINWATER® trademark and VITAMINWATER®

trade dress in the United States; (d) Glacéau has used the VITAMINWATER® trademark

and VITAMINWATER® trade dress throughout the United States; (e) the

VITAMINWATER® trademark and VITAMINWATER® trade dress are among the

preeminent marks in the beverage industry; (f) the VITAMINWATER® trademark and

VITAMINWATER® trade dress have an extremely high degree of recognition among the

general consuming public of the United States; (g) Glacéau has sold hundreds of millions

of bottles of its VITAMINWATER® product; and (h) the VITAMINWATER® trademark

and VITAMINWATER® trade dress are registered trademarks under the Lanham Act on

the Principal Register.

   49. Defendant's conduct described above blurs and impairs the

distinctiveness of the famous VITAMINWATER® trademark and VITAMINWATER®

trade dress because:  (a) Defendant uses the highly similar phrase "VITAMIN WATER"

and a highly similar trade dress to promote its goods; (b) the VITAMINWATER® trade

dress is inherently distinctive and both the VITAMINWATER® trademark and

VITAMINWATER® trade dress have acquired a high degree of distinctiveness;

(c) Glacéau engages in exclusive use of the VITAMINWATER® trademark and

VITAMINWATER® trade dress; (d) the VITAMINWATER® trademark and

VITAMINWATER® trade dress have a high degree of recognition among the general

consuming public of the United States as a designation of source of Glacéau's goods; and

(e) Defendant appears to have intended to create an association between itself and the

VITAMINWATER® trademark and VITAMINWATER® trade dress and the goodwill

symbolized by those marks.  Because of Defendant's use of the nearly identical mark

"VITAMIN WATER" in combination with a confusingly similar trade dress, there is a

likelihood that Defendant's conduct is causing actual association between Defendant and

its goods and Glacéau and the VITAMINWATER® trademark and VITAMINWATER®

trade dress.

50.    Accordingly, Defendant's conduct described above is likely to

cause dilution by blurring of, and does, in fact, dilute and detract from the distinctiveness

of, the famous VITAMINWATER® trademark and VITAMINWATER® trade dress, with

consequent damage to Glacéau and to the substantial business and goodwill symbolized

by the VITAMINWATER® trademark and VITAMINWATER® trade dress in violation

of the Trademark Dilution Revision Act of 2006, 15 U.S.C. § 1125(c).

51.    Defendant's willful acts of trademark and trade dress dilution have

caused and, unless restrained, will continue to cause, great and irreparable injury to

Glacéau and the VITAMINWATER® trademark and VITAMINWATER® trade dress and

to the substantial business and goodwill represented thereby, in an amount that cannot be

presently ascertained, leaving Glacéau with no adequate remedy at law.

52.    By reason of the foregoing, Glacéau is entitled to injunctive relief

against Defendant, restraining further acts of trademark and trade dress dilution, and,

after trial, to recover the damages resulting from Defendant's acts of trademark and trade

dress dilution.

## COUNT V: TRADEMARK AND TRADE DRESS DILUTION UNDER NEW YORK STATUTORY LAW

53.    Glacéau repeats and realleges each and every allegation in the

foregoing paragraphs as if fully set forth herein.

54.     Defendant's manufacture, distribution, sale and promotion of ÀSANTÉ is likely to dilute and detract from the distinctiveness of the VITAMINWATER® trademark and VITAMINWATER® trade dress.

55.     Defendant's acts of trademark and trade dress dilution, unless restrained, will cause great and irreparable injury to Glacéau and to the business and goodwill represented by the VITAMINWATER® trademark and VITAMINWATER® trade dress, in an amount that cannot be ascertained at this time, leaving Glacéau with no adequate remedy at law.

56.     The acts of Defendant as described above constitute trademark and trade dress dilution in violation of N.Y. Gen. Bus. Law § 360-l.

## COUNT VI: DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK STATUTORY LAW

57.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

58.     Defendant's conduct is oriented and directed towards consumers and is deceptive or misleading in a material way.

59.     Glacéau has suffered injury as a result of Defendant's conduct.

60.     The acts of Defendant as described above constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349.

## COUNT VII: UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

61.     Glacéau repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

62.    The acts of Defendant as described above constitute unfair competition in violation of Glacéau's rights under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

### PRAYER FOR RELIEF

WHEREFORE, Glacéau respectfully prays:

A.    That Defendant and all those acting in concert or participation with it (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) be temporarily, preliminarily and then permanently enjoined and restrained from:

i.    manufacturing, distributing, shipping, advertising, marketing, promoting, selling, offering or making available for sale or otherwise making any other use of any products bearing the phrase "VITAMIN WATER" or any marks that are confusingly similar to the VITAMINWATER® trademark or that are likely to blur the distinctiveness of the VITAMINWATER® trademark; and

ii.    manufacturing, distributing, shipping, advertising, marketing, promoting, selling, offering or making available for sale or otherwise making any other use of ÀSANTÉ beverages in their present trade dress or any other trade dress that is confusingly similar to that of

VITAMINWATER® beverages or is likely to blur the distinctiveness of the VITAMINWATER® trade dress; and

        iii.      representing, by any means whatsoever, that any products manufactured, distributed, advertised, offered or sold by Defendant are Glacéau's products or vice versa, and from otherwise acting in a way likely to cause confusion, mistake or deception on the part of purchasers or consumers as to the origin or sponsorship of such products; and

        iv.      doing any other acts or things calculated or likely to cause confusion or mistake in the minds of the public or to lead purchasers or consumers into the belief that Defendant's products come from Glacéau or are somehow sponsored or licensed by, or associated or affiliated with, Glacéau or its products; and

        v.      otherwise unfairly competing with Glacéau.

        B.      That Defendant and those acting in concert or participation with it (including, but not limited to, its officers, directors, agents, servants, wholesalers, distributors, retailers, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns and contracting parties) take affirmative steps to dispel such false impressions that heretofore have been created by their use of the phrase "VITAMIN WATER" or the ÀSANTÉ trade dress, including, but not limited to, recalling from any and all channels of distribution any and all infringing products and promotional materials.

        C.        That Defendant account to Glacéau for its profits and any damages sustained by Glacéau, to the extent calculable, arising from the foregoing acts of trademark and trade dress infringement, trademark and trade dress dilution, false designation of origin, deceptive acts and practices and unfair competition.

        D.        That, in accordance with such accounting, Glacéau be awarded judgment for three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

        E.        That Glacéau be awarded its costs, including its reasonable attorneys' fees and disbursements in this action, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h).

        F.        That Glacéau be awarded punitive damages pursuant to the law of the State of New York in view of Defendant's intentional and willful trademark and trade dress infringement and other conduct.

        G.        That Defendant deliver up for destruction all infringing products in its possession or control and all means of making the same in accordance with 15 U.S.C. § 1118.

        H.        That Defendant file with the Court and serve on counsel for Glacéau within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendant has complied with any injunction which the Court may enter in this action.

I.        That Glacéau have such other and further relief as the Court

may deem just and proper.

## JURY TRIAL DEMAND

Glacéau demands a trial by jury on all claims as to which a jury trial may be had.


Dated: June 2, 2008
New York, New York


DEBEVOISE & PLIMPTON LLP


By: /s/ David H. Bernstein
David H. Bernstein
(dhbernstein@debevoise.com)
S. Zev Parnass
(szparnass@debevoise.com)
919 Third Avenue
New York, New York 10022
(212) 909-6696 (telephone)
(212) 521-7696 (facsimile)

*Attorneys for Plaintiff Energy Brands Inc.*
*d/b/a Glacéau*

# EXHIBIT 1

**Int. Cl.: 32**

**Prior U.S. Cls.: 45, 46 and 48**

**Reg. No. 2,974,987**

## United States Patent and Trademark Office

Registered July 26, 2005

## TRADEMARK
### PRINCIPAL REGISTER

## VITAMINWATER

ENERGY BRANDS, INC. (NEW YORK COR-
   PORATION)
17-20 WHITESTONE EXPRESSWAY
WHITESTONE, NY 11357

   FOR: VITAMIN ENHANCED FLAVORED
DRINKING WATER, IN CLASS 32 (U.S. CLS. 45, 46
AND 48).

FIRST USE 3-12-1999; IN COMMERCE 3-12-1999.

SEC. 2(F).

SER. NO. 75-734,223, FILED 6-23-1999.

CYNTHIA SLOAN, EXAMINING ATTORNEY

# EXHIBIT 2

**Int. Cl.: 32**

**Prior U.S. Cls.: 45, 46 and 48**

**United States Patent and Trademark Office**

Reg. No. 2,975,087

Registered July 26, 2005

# TRADEMARK
## PRINCIPAL REGISTER



ENERGY BRANDS INC. (NEW YORK COR-
PORATION)
17-20 WHITESTONE EXPRESSWAY
WHITESTONE, NY 11357

FOR: NON-ALCOHOLIC, FLAVORED DRINK-
ING WATER, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 3-12-1999; IN COMMERCE 3-12-1999.

OWNER OF U.S. REG. NOS. 1,876,824, 2,658,236
AND OTHERS.

THE MARK CONSISTS OF A BOTTLE LABEL
WITH A BAND ACROSS THE TOP THIRD OF THE
LABEL, AND THE NAME GLACEAU VITAMIN-
WATER WRITTEN VERTICALLY THREE TIMES
ACROSS THE LABEL. THE WORD VITAMINWA-
TER IS WRITTEN IN LOWERCASE LETTERS AND
IN ALTERNATING EMPHASIZED AND REGULAR
FONT.

SEC. 2(F) IN PART, AS TO VITAMINWATER.

SER. NO. 76-445,170, FILED 8-29-2002.

CYNTHIA SLOAN, EXAMINING ATTORNEY

# EXHIBIT 3





UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

ENERGYBRANDS, INC.,                          : No. 02 Civ. 3227 (JSR)
                                             :
                    Plaintiff,               :
                                             : **PERMANENT INJUNCTION**
        vs.                                  : **AND FINAL JUDGMENT**
                                             :
BEVERAGE MARKETING USA, INC., and            :
HORNELL BREWING COMPANY, INC. d/b/a          :
ARIZONA BEVERAGE COMPANY,                    :
                                             :
                    Defendants.              :
------------------------------------------------------------x

M I C R O F I L M   -9·00 AM

JUL 2 3 2002

        WHEREAS, plaintiff Energy Brands Inc. ("Energy Brands") commenced this

action against defendants Beverage Marketing USA, Inc. and Hornell Brewing Company,

Inc., d/b/a Arizona Beverage Company (collectively, the "Defendants") by filing a

Complaint on April 26, 2002 (the "Complaint"), alleging, inter alia, that the trade dress

for Defendants' product sold under the trade designation WATERAID (attached as

Exhibit A) infringes the distinctive trade dress for Energy Brands' VITAMINWATER

product (attached as Exhibit B) and has caused, and will likely continue to cause,

consumer confusion;

        WHEREAS, on April 29, 2002, Energy Brands applied for a temporary

restraining order and a preliminary injunction;

        WHEREAS, on May 1, 2002, the Court made preliminary factual findings and

conclusions in a Memorandum and Order (the "TRO") temporarily restraining the

Defendants from distributing, shipping, advertising, marketing, promoting, selling and/or

offering for sale WATERAID in its current trade dress or any substantially similar trade

213408694v4

dress;

WHEREAS, Defendants have designed revised labels for the WATERAID product (attached as Exhibit C) and have provided these labels to Energy Brands;

WHEREAS, Energy Brands has indicated its belief that the revised labels do not infringe the trade dress of its VITAMINWATER product;

WHEREAS, on May 17, 2002, upon stipulation of the parties, the Court entered an order (the "PI") preliminarily enjoining Defendants from distributing, shipping, advertising, marketing, promoting, selling and/or offering for sale WATERAID in its current trade dress or substantially similar trade dress;

WHEREAS, Defendants filed an Answer and Counterclaims in this matter on May 31, 2002 (the "Counterclaims"), raising a series of defenses and asserting various counterclaims against Energy Brands, which counterclaims Defendants voluntarily dismissed on July 1, 2002;

WHEREAS, the parties now desire to conclude this litigation regarding the VITAMINWATER and WATERAID products;

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants and all those acting in concert or participation with them (including, but not limited to, their officers, directors, agents, servants, employees, representatives, attorneys, subsidiaries, related companies, successors, assigns, distributors and retailers), are PERMANENTLY ENJOINED AND RESTRAINED from:

      a.    manufacturing, distributing, shipping, advertising, marketing, promoting, selling or otherwise offering for sale WATERAID in the

21340869v4

trade dress depicted in Exhibit A attached hereto (including but not limited to

both its 20 ounce and 42 ounce sizes) or in any other trade dress that infringes the

VITAMINWATER trade dress as depicted in Exhibit B attached hereto (except

that this Order does not restrict, limit, or preclude the manufacture, distribution,

shipping, advertising, promotion, selling, or otherwise offering for sale of

WATERAID in the revised trade dress depicted in Exhibit C);

        b.     representing, by any means whatsoever, that any products

manufactured, distributed, advertised, offered or sold by the Defendants are

Energy Brands' products or vice versa, and from otherwise acting in a way likely

to cause confusion, mistake or deception on the part of purchasers or consumers

as to the origin or sponsorship of such products;

        c.     doing any other acts or things calculated or likely to cause

confusion or mistake in the mind of the public or to lead purchasers or consumers

into the belief that (i) the Defendants' products come from Energy Brands or are

somehow sponsored by, associated with, or otherwise affiliated with Energy

Brands or its products; or (ii) Energy Brands' products come from the Defendants

or are somehow sponsored by, associated with, or otherwise affiliated with the

Defendants or their products; and

        d.     from otherwise unfairly competing with Energy Brands in

connection with Energy Brands' distribution, advertising, promotion or sale of its

VITAMINWATER product.

IT IS FURTHER ORDERED that Defendants are required to file with the Court

3

21340869v4

and serve upon Energy Brands' counsel, on or before July 31, 2002, a report, in writing under oath, setting forth in detail the manner and form in which Defendants have complied with the requirements of the TRO, the PI, and this Permanent Injunction and Final Judgment. Such report shall (i) specify all steps taken by Defendants to ensure compliance with the TRO, the PI and this Permanent Injunction and Final Judgment (including by affidavit of individuals with personal knowledge of those steps), (ii) set forth a list of all distributors, retailers and other persons or entities to whom Defendants gave notice of the TRO, the PI or this Permanent Injunction and Final Judgment, including the date of notice and the manner in which it was communicated, and (iii) attach copies of all reports, memoranda, correspondence, notes, e-mails, and other documents relating to Defendants' compliance with the TRO, the PI and this Permanent Injunction and Final Judgment. To the extent that Defendants reasonably and in good faith believe that any document to be attached to the compliance report contains Defendants' trade secret information, Defendants may redact such trade secret information from the copies of the compliance report to be filed with the Court and served on Energy Brands' counsel for distribution to Energy Brands; provided, however, that Defendants shall in such case provide an unredacted copy of each such document to Energy Brands' counsel, which unredacted copy Energy Brands' counsel shall keep strictly confidential. If Energy Brands' counsel determines in good faith that disclosure of any such unredacted copy to representatives of Energy Brands is reasonably necessary in order for counsel to assess Defendants' compliance, Energy Brands may apply to this Court for a modification of this Order permitting such disclosure, it being understood

4

that, in any such proceeding, the burden of proving that the redacted material contains trade secrets shall rest on Defendants.

IT IS FURTHER ORDERED that Energy Brands may take discovery on the issue of Defendants' compliance with the TRO, the PI and this Permanent Injunction and Final Judgment, provided that Energy Brands must, if it so desires, indicate its intention to take such discovery on or before August 31, 2002. If Energy Brands timely indicates its intention to take such discovery, Defendants shall be required, upon 30 days' notice, to produce all documents that Energy Brands may request relating to the manner and form in which Defendants have complied with the TRO, the PI and this Permanent Injunction and Final Judgment, and thereafter to produce for deposition at the offices of Energy Brands' counsel the representative or representatives for Defendants most knowledgeable about the manner and form in which Defendants have complied with the TRO, the PI and this Permanent Injunction and Final Judgment.

IT IS FURTHER ORDERED that the bond filed by Energy Brands in this case is dissolved, and that Defendants shall make no claim against the bond or against Energy Brands or its attorneys or agents arising out of or related in any way to the TRO or the PI.

IT IS FURTHER ORDERED that this action is dismissed with prejudice, except that this Court shall retain jurisdiction to enforce any violation of the TRO, the PI, this Permanent Injunction and Final Judgment, and the Parties' settlement agreements dated as of July 11, 2002.

Dated: New York, New York
   7 / 19 / , 2002

               Jed S. Rakoff
               United States District Judge

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON 7/23/2

6

21340869v4

# **<u>EXHIBIT A</u>**









# EXHIBIT B





# **EXHIBIT C**









99¢



















